IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DARWIN GREGORY KNIGHT,** | : | |
| **# 194598** | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 10-0419-CB-N |
| **COUNTY OF MOBILE, et al.,** | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Upon consideration of the complaint, it is the recommendation of the undersigned that this action be dismissed with prejudice as frivolous, prior to service of process, pursuant to 28 U.S.C. §1915(e)(2)(B)(i).

I. **Complaint. (Doc. 1).**

Plaintiff filed a § 1983 complaint against defendants Mobile County, Alabama; Chris Galanos, a former District Attorney of Mobile County; and Adero J. Marshall, Assistant District Attorney of Mobile County. The claims against these defendants arise from legal proceedings that resulted in plaintiff's 1997 conviction for capital murder and sentence of life imprisonment without the possibility of parole. (Doc. 1 at 4-6). Plaintiff's chief claims against defendants are for malicious prosecution and for due process violations, for which he seeks $20 million in damages as well as punitive damages from each defendant. (Id. at 7). The Court notes that plaintiff remains incarcerated pursuant to a capital murder conviction. (Id. at 6).

The facts offered by plaintiff to support his claims are as follows: In 1994 the indictment before the grand jury contained two counts of capital murder, as it was the "custom, policy, and practice" of the district attorney's office, headed by defendant Galanos, to have only the back page of the indictment signed even though more pages preceded it. (Id. at 8). The grand jury questioned defendant Galanos about whether this document contained two counts or if it was actually two indictments "[b]ecause they were both capital murder indictments for the same person's death and the underlying offense on both of them [was] the same subsection and code section, Section 13A-5-40(a)(2), Code of Alabama 1975."[1] (Id.). Defendant Galanos responded "that it would be illegal for them to return two indictments [and] told them to choose just one of the two charges." (Id. & at 10). The grand jury chose the charge of capital murder during the robbery of U.S. currency or an attempt to rob the victim of U.S. currency. (Id. at 8). Notwithstanding, defendant Galanos tried plaintiff on both capital murder charges. (Id.).

Through using his "practice" of "getting a signature from the grand jury foreman . . . on the back page," defendant Galanos was able to tell the trial judge that the grand jury had returned true bills on both pages, thereby "play[ing] grand jury" himself. (Id. at 9-10). Plaintiff maintains that "[w]hen Mr. Galanos did that, he stepped out of his judiciary role as a prosecutor and effectively took on the duties of the grand jury and/or a court clerk." (Id.). Plaintiff was convicted on both capital murder charges and received two death sentences. (Id.). When his convictions were reversed and remanded for violating double jeopardy, the appellate court ordered that plaintiff be tried on only one charge of capital murder and one charge of robbery. (Id. & at 4). The State elected to pursue the charge of murder and the charge of robbery of the

---

[1] Section 13A-5-40(a)(2) of the Alabama Code of 1975 provides: "(a) The following are capital offenses: . . . (2) Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant." This portion of the statute has not changed since 1992.

1987 Chevrolet Camaro, which plaintiff maintains is not a charge for which he was indicted. (Id. at 9). Plaintiff maintains that he was indicted on the charge of murder during the robbery of U.S. currency or an attempt to rob the victim of U.S. currency. (Id. at 8).

Plaintiff was re-tried in 1997 and convicted of one charge of capital murder during a robbery and was sentenced to life in prison without the possibility of parole. (Id.). His conviction was affirmed on June 18, 1999. (Id. at 13). On October 23, 2009, plaintiff filed a Rule 32 petition. (Id. at 9). In July, 2010, defendant Marshall responded to the Rule 32 proceeding that the practice of the district attorney's office at that time was to strike out the signature line of the first page on a multi-count, multi-page indictment and have the grand jury foreman sign the last page. (Id. at 10). Plaintiff maintains that defendant Marshall knew that this was a fabrication, unsupported by law, and purposely denied plaintiff due process. (Id. at 6). From a copy of the grand jury's minutes, plaintiff discovered that defendant Galanos had a conversation with the grand jury telling them to only indict plaintiff on one charge, a fact that had been hidden from his attorney and him. (Id. at 10).

Plaintiff maintains that he was not indicted on the charge for which he was convicted – " the murder and robbery of the 1987 Chevrolet Camaro" - as pointed out by the Alabama Court of Criminal Appeals in its June 10, 2009 opinion. (Id. at 9 & at 15). The appellate court wrote, in its affirmance of the circuit court's denial of plaintiff's Rule 32 petition, and plaintiff marked the following:

> At trial, however, the prosecutor and the circuit court, through the evidence presented and the court's jury instructions, constructively amended Knight's indictment to charge him with murder during a robbery in which a vehicle was stolen. Floyd v. State, 659 So.2d 961, 965 (Ala. Crim. App. 1994). Thereafter, Knight was convicted of the amended charge.

(Id. at 15). The appellate court upheld the circuit court's denial of plaintiff's Rule 32 petition because the circuit court could rule only on a jurisdictional defect, and an amended indictment

3

was a non-jurisdictional defect which should have been raised at trial or on appeal. (Id. at 14-15). The appellate court also observed that the Rule 32 petition was filed well after the statute of imitations had expired and that it was plaintiff's sixth Rule 32 petition. (Id. at 14).

Plaintiff claims that the proceedings against him were a malicious prosecution and that in 1994 when defendant Galanos was running for circuit judge, he publicly stated plaintiff's conviction was an example of how well he served as a public servant. (Id. at 11). That is, defendant Galanos took plaintiff "from one murder indictment to two capital murder indictments for th[e] same man's death . . . and used witnesses who admitted they were lying [a]nd who were hired by [defendant Galanos]." (Id. at 11). Plaintiff interjects that he is black and the victim was white and that defendant Galanos used "this trumped up charge, not only for political gain, but also for racial mistreatment." (Id.).

## II. **Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).**

Because plaintiff is proceeding in forma pauperis, the Court is reviewing the complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2)(B).[2] Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, id. at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. Id.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490

---

[2]The frivolity and the failure-to-state-a-claim analysis contained in Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), was unaltered when Congress enacted 28 U.S.C. § 1915(b)(2)(B) in 1996. Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.), cert. denied, 534 U.S. 1044 (2001). However, dismissal is now mandatory under § 1915(e)(2)(B). Bilal, 251 F.3d at 1348-49.

(11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 566 U.S. ___, ___, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 566 U.S. at ___, 129 S.Ct. at 1949. It is only those well-pleaded factual allegations that a court will consider as true. Id. at ___, 129 S.Ct. at 1950. However, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. Jones v. Bock, 549 U.S. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).

When considering a pro se litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 593, 595-96, 30 L.Ed.2d 652 (1972). However, a court, does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). Furthermore, a pro se litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

5

**III. Discussion.**

    **A. Claims Against Prosecutors.**

        **1. Application of Absolute Prosecutorial Immunity.**

In a § 1983 action a prosecutor has absolute immunity for all activities that are "'intimately associated with the judicial phase of the criminal process.'" <u>Van de Kamp v. Goldstein</u>, ___U.S. __, ___, 129 S.Ct. 855, 860, 172 L.Ed.2d 706 (2009) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)). In <u>Imbler v. Pachtman</u>, <u>supra</u>, the Supreme Court first addressed the § 1983 liability of a state prosecuting officer and adopted the virtually unanimous holdings of the courts of appeals that "a prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." 424 U.S. at 420, 96 S.Ct. at 990. The rationale is clear:

> The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. [Footnote omitted.] These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from the public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

424 U.S. at 422-23, 96 S.Ct. at 991. This absolute immunity protects against the "impair[ment of] the performance of a central actor in the judicial process." <u>Malley v. Briggs</u>, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986).

A functional approach is employed to determine whether a prosecutor is absolutely immune from § 1983 liability. <u>Burns v. Reed</u>, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991). Immunity is granted to all conduct that is "intimately associated with the judicial phase of the criminal process," which includes the "initiating a prosecution and in presenting the State's case." <u>Id.</u> (quoting <u>Imbler,</u> 424 U.S. at 430-31, 96 S.Ct. at 995). That is, a prosecutor is entitled to absolute prosecutorial immunity from damages in a § 1983 action for

6

performing his function as an advocate for the government. Buckley v. Fitzsimmons, 509 U.S. 259, 272-73, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993); Rehberg v. Paulk, 611 F.3d 828, 838 (11th Cir. 2010), pet. for cert. filed, 79 U.S.L.W. 3377 (Dec. 3, 2010) (No. 10-788, 10A341). "The fact that one constitutional duty at issue was a positive duty (the duty to supply 'information relevant to the defense") rather than a negative duty (the duty to not 'use. . . perjured testimony') ma[kes] no difference" in the application of absolute prosecutorial immunity. Van de Kamp, 129 S.Ct. at 861 (quoting Imbler, 424 U.S. at 430 n.34, 96 S.Ct. at 995 n.34).

Courts have determined that absolute prosecutorial immunity covers a prosecutor's actions or inactions in a variety of situations. Absolute prosecutorial immunity extends to the prosecutor's decision of whom to prosecute, Imbler, 424 U.S. at 431, 96 S.Ct. at 995; Omegbu v. Milwaukee County, 326 Fed.Appx. 940, at **1 (7th Cir. 2009) (unpublished), and to a prosecutor's conduct before the grand jury. Buckley, 509 U.S. at 273, 113 S.Ct. at 2615; Burns, 500 U.S. at 490, 111 S.Ct. at 1941. This immunity protects "the public prosecutor, in deciding whether a particular prosecution shall be instituted or followed up, [as the prosecutor] performs much the same function as a grand jury." Butz v. Economou, 438 U.S. 478, 510, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978) (quoting Yaselli v. Goff, 12 F.2d 396, 404 (2d Cir.), aff'd, 275 U.S. 503 (1927)). Furthermore, prosecutors are entitled to absolute immunity for "knowingly [offering] perjured testimony and fabricated exhibits at trial[.]" Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1279-80 (11th Cir. 2002).

Absolute immunity also extends to other events in the criminal process where the prosecutor is acting as the State's advocate. See Allen v. Thompson, 815 F.2d 1433, 1434 (11th Cir. 1987) (a prosecutor was entitled to absolute immunity for forwarding requested information

7

to the Parole Commission); Ellibee v. Fox, 244 Fed. Appx. 839, at **5 (10th Cir. 2007) (unpublished) ("Absolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings, including direct appeals, habeas corpus proceedings, and parole proceedings[.]") (quotation omitted); Johnson v. Kegans, 870 F.2d 992, 997-98 (5th Cir.) (a prosecutor was entitled to absolute immunity for a statement to the parole board),[3] cert. denied, 492 U.S. 921 (1989); Lucien v. Preiner, 967 F.2d 1166, 1167-68 (7th Cir.) (a prosecutor's statement at a clemency hearing was covered by absolute immunity), cert. denied, 506 U.S. 893 (1992); Bruce v. Wade, 537 F.2d 850, 852 (5th Cir. 1976) (a prosecutor was entitled to absolute immunity for filing allegedly false affidavits in plaintiff's federal habeas proceeding).

It is only when a prosecutor acts outside of his role as an advocate that absolute immunity does not extend to his acts. Van de Kamp, ___U.S. at ___, 129 S.Ct. at 861 ("[A]bsolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." ). To determine whether absolute immunity applies, the court examines the function that is being fulfilled by the prosecutor's activity. Id. Giving legal advice during a criminal investigation, making statements to the press, and acting "as a complaining witness in support of a warrant application" are activities by a prosecutor that are not protected by absolute immunity. Id. at 861.

In the action at hand, plaintiff complains about defendant Galanos's conduct of asserting in 1994 that two indictments for capital murder were rendered by the grand jury and in 1997 for proceeding against plaintiff after the remand on the capital murder charge with the charge for the robbery of the 1987 Camaro, on which he had not been indicted. Plaintiff also complains about

---

[3] The Eleventh Circuit in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)((en banc), adopted as binding precedent the decision rendered by the former Fifth Circuit prior to October 1, 1981.

the indictment process that was used in 1994 by defendant Galanos, defendant Galanos's use of hired witnesses who perjured themselves, and racial mistreatment on account of him being black and the victim being white. (Id. at 11). In regard to these actions defendant Galanos was functioning in his role as a prosecutor either in initiating criminal proceedings against plaintiff or in presenting the State's case against plaintiff, whether it was before the grand jury or the judge, whether it was for offering perjured testimony, or whether it was for instituting procedures for the grand jury in rendering indictments. Accordingly, defendant Galanos is entitled to absolute prosecutorial immunity from damages for these actions.

With respect to defendant Marshall, plaintiff complains about defendant Marshall's response to his Rule 32 petition. It is clear that in responding to plaintiff's Rule 32 petition that defendant Marshall was functioning as the State's advocate in a post-conviction proceeding. Accordingly, defendant Marshall is entitled to absolute prosecutorial immunity from damages for the claim against him in this action.

Accordingly, the undersigned finds that these damages claims against defendant Galanos and defendant Marshall are due to be dismissed as frivolous.

### 2. Defamation Claim.

In addition, plaintiff further alleges that defendant Galanos made statements to the media using the plaintiff's case as an example to show that he was good a public servant and, therefore, should be elected to a circuit court judgeship. Plaintiff identifies 1994 as the year when defendant Galanos made this statement. (Id. at 11).

This event occurred at least sixteen years ago. Whereas, the time period for filing a § 1983 claim in Alabama is two years from the date that the claim accrues. Lufkin v. McCallum, 956 F.2d 1104, 1105 (11th Cir.), cert. denied, 506 U.S. 917 (1992). A cause of action accrues

"when the plaintiff has 'a complete and present cause of action'" . . . that is, 'when plaintiff can file suit and obtain relief.'" Id. (citations omitted).

Plaintiff's claim for defamation accrued in 1994 and therefore he had two years from that date to file an action based on the alleged defamation. Plaintiff, however, filed this action on August 4, 2010, well after the statute of limitations had run. Accordingly, this claim against defendant Galanos for his statement to the media is due to be dismissed as frivolous because it is barred by the two-year statute of limitations.[4] Battle v. Centrasl State Hosp., 898 F.2d 636, 640 n.2 (11th Cir. 1990) (finding as frivolous a dismissal based on the affirmative defense of the statute of limitations).

**B. Claim Against Defendant Mobile County.**

Plaintiff's claim against defendant Mobile County is for "malicious prosecution and violation of due process due to the policy custom and practice they used to wrongfully convict [plaintiff] with." (Doc. 1 at 5). The facts offered to support this claim are: "In 1994 [plaintiff] was convicted on two capital murder charges but was only indicted on one indictment. [Plaintiff] received two death sentences. Then after a remand order in 1997 [plaintiff] was tried and convicted for an unindicted charge." (Id.).

Later in his allegations plaintiff states that while defendant Galanos was head of the Mobile County District Attorney's Office, he utilized a "policy, practice and custom that . . . if the grand jury foreman endorsed the last page of a two count indictment, it meant that the other page was endorsed as well." (Id. at 8). Then, plaintiff advises that defendant Marshall said that

---

[4] The Court is forgoing a discussion on the merits of bringing a defamation claim in a § 1983 action. Defamation is typically a state cause of action. Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976).

10

the complained of policy was the practice of the District Attorney's Office at that time. (Id. at 10).

Based on the allegations, it appears that plaintiff is seeking to hold defendant Mobile County liable for defendant Galanos's practice or custom. In order to state a §1983 claim against a local governmental entity, a plaintiff is required to allege that his injury was caused by that entity's policy or custom. Monell v. Department. of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978); see Grech v. Clayton County, Ga., 335 F.3d 1326, 1343 (11th Cir. 2003) (applying Monell's decision to a county). However, a local governmental entity "cannot be held liable solely because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691, 98 S.Ct. at 2036. Inasmuch as it appears that plaintiff seeks to hold defendant Mobile County liable for defendant Galanos's actions, plaintiff has failed to state a claim upon which relief can be granted against defendant Mobile County.

Not only do plaintiff's allegations fail to show that the policy or custom complained of was that of defendant Mobile County, defendant Galanos's actions cannot be imputed to defendant Mobile County for another reason. Defendant Galanos is not an employee of the county; a district attorney is an employee of the State of Alabama. McMillian v. Monroe County, Ala., 520 U.S. 781, 790, 117 S.Ct. 1734, 1740, 138 L.Ed.2d 1 (1997) (citing Hooks v. Hitt, 539 So.2d 157, 159 (Ala. 1988)). Therefore, it appears that no policy or custom of defendant Mobile County could have caused the complained of injury. Accordingly, the claim against defendant Mobile County is frivolous and due to be dismissed.

**C. An Alternate Basis for Dismissal Under *Heck v. Humphrey*.**

Many of plaintiff's claims are indicative of his belief that he would not be convicted of a crime if the alleged constitutional violation had not occurred. Claims of this nature generally come within the rule announced by the Court in Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In Heck, the Court ruled that a damages claim in a § 1983 action that would have the effect of invalidating an outstanding conviction or sentence if the Court was to rule favorably on it could not proceed until the underlying conviction or sentence had been invalidated, because until then the Court reasoned that no cause of action existed. Id. at 486-87, 114 S.Ct. at 2372-73. The Heck Court analogized the claim before it to a common-law cause of action for malicious prosecution, which requires that the accused prove the termination of the prior criminal proceeding in his favor. Id. at 484, 114 S.Ct. at 2371. Thus, the Court ruled that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, (footnote omitted), a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id. at 486-87, 114 S.Ct. at 2372-73.

In the present action, plaintiff indicates that his conviction has not been invalidated in a manner prescribed by Heck. Although plaintiff advised the Court of the history of his conviction for capital murder and robbery of 1987 Camaro with its earlier reversal and his subsequent retrial and conviction, the fact remains that his 1997 resultant conviction and sentence, which arose from the same facts, have not been invalidated. *Cf.* St. Germain v. Isenhower, 98 F. Supp.2d 1366, 1371-72 (S.D. Fla. 2000) (finding that the plaintiff's malicious prosecution claims, based on acquittals of the felony charges, were barred by Heck because his

convictions on lesser included offenses had not been invalidated so there was not a favorable termination of his felony charges). Therefore, without deciding if plaintiff alleges a valid claim for a constitutional violation, the decision in Heck bars the claims against defendant Galanos's for his actions before the grand jury and judge, his decision of whom to prosecute, his grand jury practice, and his retrial of plaintiff; the claim against defendant Marshall for filing the State's Rule 32 response; and the claim against defendant Mobile County for its alleged grand jury practice because if the Court was to rule favorably on these claims, they would have the effect of invalidating plaintiff's conviction. See e.g., Omegbu, 326 Fed.Appx. at **1 ("A decision here that Omegbu was selectively prosecuted would mean that his conviction was unlawful, (citations omitted); thus his equal-protection claim is barred under Heck."). On the other hand, if a claim of plaintiff's is not barred by Heck, then the two-year statute of limitations would prevent the claim from proceeding (except for plaintiff's Rule 32 claim against defendant Marshall). Lufkin, 956 F.2d at 1105 (the statute of limitations for a § 1983 action in Alabama is two years from the date of its accrual). Accordingly, the undersigned finds that plaintiff's action is also subject to dismissal as frivolous on this alternate basis.

**IV. Conclusion.**

Based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice as frivolous, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 17th day of February, 2011.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      **Objection**.  Any party who objects to this recommendation, or anything in it, must, within fourteen days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within fourteen days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Done the __17th__ day of February 2011.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[5]Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).